UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL KROEGER, | Case No. 18-cv-00389-SI |
| Plaintiff, | |
| v. | **ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| ANDREW SAUL,[1] | Re: Dkt. Nos. 24, 27 |
| Defendant. | |

This case is now before the Court for a second time, after having been remanded to the Social Security Administration ("SSA") in May 2015. Plaintiff Michael Kroeger now seeks review of the January 2017 decision the administrative law judge ("ALJ") issued after remand, in which the ALJ denied disability insurance benefits ("DIB"). In his motion for summary judgment, plaintiff asks the Court to reverse the denial of DIB and award him benefits or, in the alternative, to remand the case for further proceedings. Dkt. No. 24. The Commissioner of Social Security has filed a cross-motion to affirm the denial of DIB. Dkt. No. 27.

Having considered the parties' papers and the administrative record, the Court hereby GRANTS plaintiff's motion for summary judgment and DENIES defendant's cross-motion for summary judgment. The matter is REMANDED for immediate payment of benefits.

## BACKGROUND

### I.      Procedural Background

In January of 2010, plaintiff filed an application for DIB under Title II of the Social Security

---

[1] Andrew Saul, Commissioner of Social Security, is substituted for his predecessor, Nancy A. Berryhill, pursuant to Federal Rule of Civil Procedure 25(d).

Act. Administrative Record ("AR") at 14, 1619. In July 2010, plaintiff filed an application for supplemental security income ("SSI") under Title XVI of the Social Security Act. *Id.* at 14. The applications were denied initially and on reconsideration. *Id*. at 40, 45. Plaintiff requested a hearing, which ALJ Phillip C. Lyman conducted on May 25, 2012. *Id*. at 1323. At the hearing, plaintiff, who was represented by counsel, argued for a disability onset date of June 29, 2011.[2] *Id*. at 14. At the time, plaintiff's counsel believed that his Date Last Insured was March 31, 1998, and that a claim for DIB would be futile, although the ALJ informed plaintiff at the hearing that the correct Date Last Insured was December 31, 2010.[3] *See id.* at 30, 1333. Counsel thus waived plaintiff's claim to Title II benefits (DIB). *Id.* at 1334. After the hearing, plaintiff's counsel realized the error in the calculation of the Date Last Insured and sought to rescind plaintiff's waiver of his claim to DIB; plaintiff then amended the alleged onset date to December 31, 2010, in order to pursue his DIB claim. *Id.* at 14, 30.

On June 14, 2012, the ALJ issued a decision. The ALJ's decision acknowledged that plaintiff amended the alleged onset date to December 31, 2010. *Id.* at 14. The ALJ granted plaintiff's SSI application, finding he had been disabled since June 29, 2011. *Id*. at 26. However, the ALJ denied the DIB application based on a finding that plaintiff was not disabled prior to or on December 31, 2010, the last date he was insured. *Id*. The Appeals Council denied review, *id.* at 4, and plaintiff filed an appeal in the district court that was assigned to the undersigned Judge. *See Kroeger v. Colvin*, No. 13-cv-05254-SI (filed Nov. 12, 2013). In the appeal, plaintiff argued that he was disabled on December 31, 2010, the last date he was insured, thereby making him eligible for DIB.

On May 19, 2015, this Court issued a decision reversing and remanding the case for further

---

[2] Throughout these proceedings, plaintiff has been represented by several different certified law students, under the supervision of the same attorney.

[3] To qualify for DIB (Title II benefits), a claimant must be "fully insured," as defined at 42 U.S.C. § 414(a), and have sufficient quarters of coverage. *See* 42 U.S.C. § 423; 20 C.F.R. § 404.130(b). The claimant has the burden of proof to demonstrate that he or she was disabled prior to the date on which his disability insured status expired, referred to here as the "Date Last Insured." *See Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998) (citing 42 U.S.C. § 423(c)).

proceedings. *Kroeger v. Colvin*, No. 13-cv-05254-SI, Dkt. No. 23 ("Prior Order"). The Court ordered that on remand:

> The ALJ should determine the severity of plaintiff's symptoms on December 31, 2010, without attempting to separate out the symptoms related to plaintiff's substance use. If the ALJ finds that plaintiff's symptoms are severe enough to be disabling after completing the five-step disability [inquiry], then the ALJ should assess the materiality of plaintiff's substance use on December 31, 2010. If the ALJ finds that plaintiff's substance use was material to a finding of disability on December 31, 2010, then plaintiff was not disabled as of December 31, 2010, the last date insured, and does not qualify for DIB. If the ALJ determines that plaintiff's mental impairments as of December 31, 2010 would remain disabling if plaintiff stopped his substance use, then plaintiff will be found to have been disabled on December 31, 2010, thereby qualifying for DIB.

*Id.* at 20. The Court further explained that, in determining whether plaintiff's substance use was material to a finding of disability on December 31, 2010:

> [t]he ALJ should evaluate the opinions of Dr. Bilik and Dr. Anderson in light of plaintiff's ongoing disabling mental impairments despite maintaining sobriety on June 29, 2011. The ALJ should also evaluate the plaintiff's treatment records between December 2010 and June 29, 2011, including the medical records during plaintiff's inpatient stay at the VA from January to February 2011 and treatment records from plaintiff's clinical social worker Omar Geray, to determine whether plaintiff's mental impairments would have remained in the absence of his substance use. As the "materiality" determination is critical to whether December 31, 2010 was the onset date, if the record seems ambiguous as to whether plaintiff's substance use was material to a finding of disability on December 31, 2010, then the ALJ should consult a medical expert to make the determination.

*Id.* at 19. The Court did not disturb that portion of the ALJ's decision finding plaintiff entitled to SSI benefits.

The Appeals Council vacated the prior decision of the ALJ and remanded the case to the ALJ. AR at 1524. On remand, plaintiff amended his alleged disability onset date to January 7, 2010. *Id.* at 1356. On October 17, 2016, ALJ Lyman held a new administrative hearing that lasted three hours. Plaintiff appeared and testified, as did plaintiff's wife, Mary Kroeger. Richard Cohen, MD, testified as an impartial medical expert, and Ronald Morrell testified as an impartial vocational expert. *Id.*

On January 19, 2017, the ALJ issued a partially favorable decision, again finding that plaintiff was disabled beginning on June 29, 2011, and was therefore eligible for SSI, which is not dependent on a claimant's insured status, but was ineligible for DIB, which requires a claimant to

have been disabled on or before the Date Last Insured. *See id.* at 3057-58.[4] After the timeframe

had passed within which to submit exceptions to the ALJ's decision, plaintiff, through his counsel,

offered exceptions to the Appeals Council. *Id.* at 1343. On May 25, 2017, the Appeals Council

notified plaintiff of the untimeliness of the submission and requested plaintiff provide evidence that

he had timely submitted the exceptions. *Id.* After plaintiff did not respond, on November 13, 2017,

the ALJ's decision became the final decision of the Commissioner after remand. *Id.*

On January 17, 2018, plaintiff filed this action for judicial review pursuant to 42 U.S.C.

§ 405(g). Dkt. No.1. Plaintiff moved for summary judgment, and defendant opposed and cross-

moved for summary judgment. Dkt. Nos. 24 ("Pl.'s Mot."), 27 ("Def.'s Cross-Mot."). Plaintiff also

filed a reply brief. Dkt. No. 28 ("Pl.'s Reply").

## II.    Medical History

At the time of the most recent administrative hearing on October 17, 2016, plaintiff was a

fifty-five-year-old veteran with a long history of bipolar disorder, mood disorder, episodic anxiety,

depression, and substance abuse.[5] *See* AR at 14, 142, 2888. After dropping out of high school,

plaintiff enlisted in the Navy and served in aviation maintenance. *Id.* at 142. Plaintiff left the service

in 1985 and worked as a carpenter. *Id.* During the early 1990s, plaintiff's mental health declined,

and at some point plaintiff began self-medicating with drugs. *Id.* Due to his worsening psychiatric

symptoms, plaintiff was unable to work in 1994 and has not worked since. *Id.* Plaintiff has also

suffered from various physical ailments such as foot deformities, a broken leg in April 2010,

diagnosis of Hepatitis C in 2010, and prostate cancer in 2011, but he does not make these the focus

of his appeal. *See id.* at 143-44, 274, 367, 926, 1258. Plaintiff previously received SSI, but on a

continuing disability review, the SSA terminated his benefits after finding that he was no longer

---

[4] The administrative record that the SSA originally filed in this case was missing the final page of the ALJ's January 19, 2017 decision. The SSA later provided this page in a supplemental transcript at the request of the Court. *See* Dkt. Nos. 32, 36.

[5] Plaintiff was forty-eight years of age at the time of his alleged onset date of disability, January 7, 2010, and was forty-nine at the time of his Date Last Insured, December 31, 2010. *See* AR at 2888-90.

disabled as of August 2007. *Id.* at 68.

In 2008 and 2009, plaintiff was treated at Kaiser Permanente for his bipolar and mood disorders and for his substance dependency. *Id.* at 152-201. On January 7, 2010, plaintiff was voluntarily hospitalized through the Veterans' Administration ("VA") medical system and treated for bipolar disorder, depression, anxiety, suicidal ideation, opioid dependence, and amphetamine abuse. *Id.* at 433-481. After being discharged on January 26, 2010, plaintiff sought outpatient treatment for his mental health symptoms and substance dependency. *Id.* at 419. Throughout March and April of 2010, plaintiff received therapy and medication for his depression and anxiety (*id.* at 368, 371, 376, 378, 381, 387), and plaintiff was also admitted to the VA emergency room in between psychiatric appointments due to his increasing anxiety (*id.* at 364, 366, 385).

Sometime in mid-2010, plaintiff relapsed into methamphetamine and opiate use and was not treated at the VA for several months. *Id.* at 361-64. On November 5, 2010, plaintiff was seen at the VA by psychiatrist Dr. Rukhsana Khan, MD, and was assessed with having "[p]olysubstance abuse and dependence [and] [m]ood disorder secondary to active substance abuse." *Id.* at 362-63. On the same day, plaintiff began seeing a mental health clinical social worker Omar Geray, LCSW, and expressed interest in the VA's detoxification and rehabilitation programs. *Id.* at 360-61. On December 20, 2010, while waiting for an opening in one of the VA's residential treatment programs, plaintiff was seen by psychiatrist Dr. Vanessa de la Cruz, MD, and was diagnosed with amphetamine abuse, opioid dependence, mood disorder, and substance-induced bipolar with rapid cycling. *Id.* at 356-58. December 31, 2010, was the last date plaintiff was insured. *Id.* at 99.

On January 5, 2011, plaintiff was admitted into the VA's Foundations of Recovery addiction treatment program. *Id.* at 343. His psychiatric intake evaluation lists multiple mood disorder symptoms, including suicidal ideation and depressive episodes. *Id.* at 313-14, 1129-39. During his hospitalization, plaintiff was treated for substance dependency, bipolar disorder, mood disorder, depression, and suicidal ideation. *Id.* at 1028-29, 1035-36, 1041-42, 1080, 1130. Upon his discharge on February 4, 2011, plaintiff was placed on the waitlist for the long-term inpatient Homeless Veterans Rehabilitation Program ("HVRP"). *Id.* at 1080. While waiting for an opening at HVRP, plaintiff continued to receive outpatient treatment through the VA for his substance

dependency and his ongoing mental health symptoms, and plaintiff was prescribed Effexor for his depression. *Id*. at 1010-12.

On June 29, 2011, plaintiff entered the VA's First Step Program for relapse prevention training, and on September 1, 2011, plaintiff was discharged and directly transferred to HVRP. *Id*. at 673, 721. During his time as an inpatient at First Step Program and HVRP, plaintiff abstained from all substances, received training for relapse prevention and life skills, and was treated for his mental health symptoms. *Id*. at 673, 722, 989-90, 992. Plaintiff was discharged on March 15, 2012, and received outpatient care throughout 2012. *Id*. at 760, 736-58.

## III. Medical Evidence

In addition to reviewing treatment records, the ALJ considered the opinions of various non-treating mental health professionals. These include: (1) Dr. Scaramozzino, a consultative psychologist who examined plaintiff on September 4, 2010; (2) Dr. Bilik, a non-examining consultative psychologist who reviewed plaintiff's records and submitted a report on October 6, 2010; (3) Dr. Anderson, a non-examining psychiatrist who testified at plaintiff's first hearing on May 25, 2012; and (4) Dr. Cohen, a non-examining psychiatrist who testified at plaintiff's second hearing on October 17, 2016.

### A. Dr. Scaramozzino, PhD

On September 4, 2010, examining psychologist Dr. James Scaramozzino, PhD, conducted a consultative psychiatric evaluation on behalf of the SSA. *Id*. at 202. Dr. Scaramozzino examined plaintiff and reviewed plaintiff's medical records from his treatment at Kaiser Permanente in 2008. *Id*. Dr. Scaramozzino noted that the severity of plaintiff's psychiatric symptoms was in the "moderate to severe range as regards to his ongoing use of illicit drugs" and indicated that the likelihood of the claimant's mental condition improving in the next 12 months was "poor." *Id*. at 207. He also stated that "[t]he diagnosis of bipolar did not seem to be appropriate" and that "there does not appear to be any sustainable period of time where a more clear diagnosis could be made because of the ongoing consistent use of illicit drugs." *Id*.

He diagnosed plaintiff with amphetamine dependence and opined that, due to ongoing substance use, plaintiff had moderate to marked impairments in the following work-related functioning: ability to accept instructions from a supervisor and respond appropriately, ability to complete a normal workday and workweek without interruptions at a consistent pace, and ability to deal with various changes in the work setting. *Id*. at 207-08. He also opined that, due to ongoing substance use, plaintiff had moderate impairment in his ability to understand and remember very short and simple instructions, ability to maintain concentration and attention, and ability to interact with co-workers. *Id*. He stated that plaintiff would have a fair to high likelihood of emotionally deteriorating in a work environment. *Id*.

### B.    Dr. Bilik, PsyD

On October 6, 2010, non-examining SSA consultative psychologist Dr. Harvey Bilik, PsyD, reviewed plaintiff's records from Kaiser Permanente for 2008 and 2009, records from the VA hospital,[6] and the consultative examination conducted by Dr. Scaramozzino. *Id*. at 209, 222. Dr. Bilik interviewed plaintiff mainly over the phone but did not examine plaintiff.[7] *Id*. On the basis of his review, Dr. Bilik noted the following medically determinable impairments: mood disorder not otherwise specified[8] and amphetamine abuse/dependence. *Id*. at 215, 218. He opined that plaintiff had mild limitations in activities of daily living and moderate limitations in maintaining social functioning and in maintaining concentration, persistence, or pace. *Id*. at 220. He also noted

---

[6] While Dr. Bilik indicates that he reviewed records from the VA hospital (AR at 209), the "Consultant's Notes" only mention the treatment records from Kaiser and Dr. Scaramozzino's consultative examination (*see id.* at 222).

[7] Dr. Bilik's notes indicate that plaintiff "came into the office to sign the SSA-827. He was casually dressed and fairly pleasant." AR at 209. The notes do not indicate that any in-person examination took place.

[8] The exact diagnosis was identified as "MOOD ORDER NOS; r/o BIOPOLAR DISORDER," which translates to "mood disorder not otherwise specified; rule out bipolar disorder." *See* AR at 215.

moderate limitations in workplace functioning in areas related to sustained concentration and persistence, social interaction, and adaptation.  *Id*. at 223-24.  Then, he determined that plaintiff only had moderate functional limitations in any domain, including limitations related to substance use, and that if plaintiff manifested any ongoing marked functional limitations, then "[plaintiff's substance use] would likely be seen as a primary factor."  *Id*. at 225.

### C.  Dr. Anderson, MD

Dr. David Anderson, MD, a non-examining psychiatrist, reviewed plaintiff's records and testified as the medical expert at plaintiff's hearing on May 25, 2012.  *Id*. at 1328, 1332, 1335.  Because at the time of the hearing plaintiff was alleging a disability onset date of June 29, 2011, Dr. Anderson was only asked to consider plaintiff's condition as of that date.  *Id.* at 1335-38.  Dr. Anderson testified that beginning on June 29, 2011, the day that plaintiff entered long-term treatment at the VA, plaintiff suffered ongoing mental health symptoms despite maintaining sustained sobriety.  Based on this fact, Dr. Anderson opined that there was "compelling evidence" that plaintiff's underlying mental conditions, independent of plaintiff's substance use, met or equaled one of the listings of severe impairments (listings 12.02 and 12.04) beginning on June 29, 2011.  *Id*. at 1336-37.  However, he testified that "from 2008 through 2010, it was clear . . . that [plaintiff's] methamphetamine use was highly material" and that plaintiff's mental conditions were not disabling independent of plaintiff's substance use.  *Id*. at 1337.

### D.  Dr. Cohen, MD

Dr. Richard W. Cohen, MD, was a non-examining psychiatrist who testified as an impartial medical expert at plaintiff's second administrative hearing, held on October 17, 2016.  The ALJ presented Dr. Cohen with four different hypotheticals, and Dr. Cohen opined that under each one the hypotheticals, claimant would have restrictions ranging from mild to moderate for the "B" criteria of Listing 12.09 (substance addiction disorder).[9]  *Id.* at 2895-2907.  Dr. Cohen also opined

_____

[9] Effective January 17, 2017, the Social Security Administration removed listing 12.09 "because we cannot use listing 12.09 alone to meet our definition of disability."  Revised Medical

about whether the claimant's drug use was present and material under each hypothetical and whether the claimant could perform simple, detailed, or complex work. *See id.*

## LEGAL STANDARD

### I. Standard of Review

The Social Security Act authorizes judicial review of final decisions made by the Commissioner. 42 U.S.C. § 405(g). A court's review of a disability determination is limited, and a final administrative decision may be altered "only if it is based on legal error or if the fact findings are not supported by substantial evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987). Substantial evidence is the relevant evidence in the entire record "which a reasonable person might accept as adequate to support a conclusion." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). Substantial evidence consists of "more than a mere scintilla but less than a preponderance." *Young v. Sullivan*, 911 F.2d 181, 183 (9th Cir. 1990). Courts "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision should be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The substantial evidence standard is a deferential standard of review. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

A district court may enter a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). If additional proceedings can remedy defects in the original administrative proceedings, a Social Security case should be remanded. *See Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). A decision of the ALJ will not be reversed for errors that are harmless. *Burch*, 400 F.3d at 679 (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991)).

---

Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66152 (Sept. 26, 2016).

## II.     The Five-Step Disability Inquiry

A claimant is "disabled" under the Social Security Act if: (1) the claimant "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can  be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(A)-(B).  The SSA regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled.  20 C.F.R. § 416.920(a)(4).  The claimant has the burden of proof for steps one through four and the Commissioner has the burden of proof for step five.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

The five steps of the inquiry are:

> 1. Is claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

> 2. Is the claimant's impairment severe?  If so, proceed to step three.  If not, then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

> 3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1?  If so, then the claimant is disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

> 4. Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

> 5. Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).  The ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  *Tackett*, 180 F.3d at 1098 n.3.

In between the third and fourth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4), (e), 416.945(a)(5)(1). To determine the RFC, the ALJ considers the impact of the claimant's symptoms on his or her ability to meet the physical, mental, sensory, and other requirements of work. *Id.* §§ 404.1545(a)(4), 416.945(e). The ALJ will evaluate all the claimant's symptoms and the extent to which these symptoms are consistent with evidence in the record. *Id.* The evidence can include the claimant's own statements about his or her symptoms, but such statements must be adequately supported by the record in order to establish a disability. *Id.* In order to determine whether the claimant's statements are adequately supported, the ALJ must first determine whether the claimant has a medical impairment that could reasonably be expected to produce his or her symptoms, and then must evaluate the intensity and persistence of the claimant's symptoms. *Id.* When evaluating intensity and persistence, the ALJ must consider all of the available evidence, including the claimant's medical history, objective medical evidence, and statements about how the claimant's symptoms affect him or her. *Id.* The ALJ cannot reject statements about the intensity and persistence of symptoms solely because no objective medical evidence substantiates the statements. *Id.* §§ 404.1529(c)(2), 416.929(c)(2). The ALJ must also consider factors relevant to the claimant's symptoms, such as the claimant's daily activities, the claimant's medications and treatment, any other measures the claimant uses to alleviate symptoms, precipitating and aggravating factors, and any other factors relevant to the claimant's limited capacity for work due to his or her symptoms. *Id.* § 416.929(c)(3)(i)-(vii). After determining the RFC, the ALJ proceeds to steps four and five of the disability inquiry.

## III. Drug Addiction and Alcoholism

If, considering all of the claimant's medically determinable impairments, there is a determination that the claimant is disabled, and there is medical evidence showing drug addiction and alcoholism ("DAA"), then the ALJ must determine whether the DAA is "material" to the finding that the claimant is disabled. 20 C.F.R. §§ 404.1535, 416.935. The Social Security Act provides that a claimant "shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the . . . determination that the individual is disabled." 42 U.S.C.

§ 423(d)(2)(C). In determining whether a claimant's DAA is material, the test is whether an individual would still be found disabled if he or she stopped using drugs or alcohol. *See* 20 C.F.R. §§ 404.1535(b), 416.935(b); *Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007); *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998). The ALJ must "evaluate which of [the claimant's] current physical and mental limitations . . . would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the ALJ determines that the claimant's remaining limitations are disabling, then the claimant's DAA is not a material contributing factor to the determination of disability, and the claimant is disabled, independent of his or her DAA. *See id.* §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii). The claimant bears the burden of proving that his substance use is not a material contributing factor to his disability. *Parra*, 481 F.3d at 745.

The Ninth Circuit has ruled that when a claimant has a history of drug or alcohol use, the ALJ must first determine the severity of the claimant's symptoms without attempting to filter out which impairments are related to the claimant's drug or alcohol use. *Bustamante*, 262 F.3d at 955. If the ALJ determines that the claimant's impairments, including the impairments related to drug or alcohol use, are severe enough to be disabling, then the ALJ proceeds in assessing the materiality of the claimant's DAA, i.e., whether the claimant would still be found disabled if he or she stopped using drugs or alcohol. *Id.* (interpreting 20 C.F.R. §§ 404.1535, 416.935); *see also* SSR 13-2p, 78 Fed. Reg. 11939, 11941 (Feb. 20, 2013).[10]


## ALJ'S DECISION

In the decision dated January 19, 2017, following the rehearing directed by this Court, the ALJ found that plaintiff's Date Last Insured, or the last date of plaintiff's insured status, was

---

[10] Social Security Rulings in the Federal Register are published by the Commissioner of Social Security and are binding on all components of the Social Security Administration, including ALJs, although they "do not carry the "'force of law.'" 20 C.F.R. § 402.35(b)(1); *Molina v. Astrue*, 674 F.3d 1104, 1113 n.5 (9th Cir. 2012) (quoting *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009)).

December 31, 2010. AR at 1359. The ALJ then applied the five-step disability inquiry described in 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the amended alleged disability onset date of January 7, 2010. *Id.* at 1356, 1359. At step two, the ALJ found that since the alleged onset date of January 7, 2010, plaintiff's severe impairment was polysubstance use disorder. *Id.* at 1359. The ALJ found that beginning on June 29, 2011, plaintiff's severe impairments were: "organic mental disorder with cognitive, emotional, and behavioral changes as a result of his acknowledged long-standing history of heavy substance abuse since age 8-10; and polysubstance use, in full sustained remission." *Id.* The ALJ examined treatment records from February 2008 through June 29, 2011, and explained that:

> [a]lthough impairments such as a depressive disorder, a mood disorder, and anxiety disorder, or a bipolar disorder are occasionally mentioned among the claimant's diagnoses prior to the established onset date of June 29, 2011; the undersigned notes that these diagnoses were always based exclusively on the claimant's subjectively reported history of long-standing anxiety, depression, and bipolar symptomatology, rather than as a result of clinical abnormalities during mental status examinations or longitudinal mental health treatment. . . .
>
> Although the claimant was occasionally provisionally diagnosed with mental impairment aside from polysubstance use, these diagnoses were provisional and based exclusively on the claimant's subjective reported history of long-standing depression and bipolar symptomatology and his occasional description of his substance abuse as "self-medicating" these underlying impairments. Additionally, despite occasional mention of a possible anxiety disorder, mood disorder, or bipolar disorder by attending physicians and clinicians; subsequent treating and attending physicians repeatedly diagnosed the claimant only with a polysubstance use disorder and reported that the claimant's acknowledged heavy substance abuse since age 8-10 – and with virtually no significant periods of sobriety between the claimant's childhood and the established onset date of June 29, 2011 – effectively preclude[ed] solid diagnosis and render[ed] impossible effective evaluation of any potential underlying mental impairments.

*Id.* at 1359-60.

The ALJ gave substantial weight to the opinions of the non-examining medical experts who testified, Dr. Anderson and Dr. Cohen. *Id.* at 1366. In explaining his finding at step two, the ALJ explained that each testifying expert found, "(indirectly in the case of [Dr. Anderson] and specifically in the case of [Dr. Cohen])[,] that the claimant's acknowledged long-standing heavy polysubstance abuse since age 8-10 with only one brief period of institutional sobriety in 2007 prior to the claimant's sustained sobriety beginning June 29, 2011 and continuing, was claimant's only

13

established and documented medically determinable impairment." *Id.* at 1365-66.

At step three, the ALJ found that prior to June 29, 2011, plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 1367. The ALJ found that plaintiff had "mild restriction in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and one to two episodes of decompensation, each of extended duration." *Id.* The ALJ found that prior to June 29, 2011, plaintiff "did not satisfy the paragraph 'C' criteria of the applicable mental disorder listing(s)." *Id.* at 1369.

Before proceeding to step four, the ALJ determined plaintiff's residual functional capacity. The ALJ found that prior to June 29, 2011, plaintiff

> had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is precluded from climbing ladders, ropes, or scaffolds and from working around work hazards such as unprotected heights or dangerous moving machinery. The claimant must avoid frequent or concentrated exposure to respiratory irritants. The claimant would be incapable of performing detailed tasks during only less than 10% of an 8-hour workday; and would be incapable of interact[ing] appropriately with the public only less than 10% of an 8-hour workday. The claimant would be forced to miss less than one workday per month. . . .

*Id.* at 1369-70.

In so finding, the ALJ determined that the testimony of plaintiff and of his wife regarding the severity of plaintiff's symptoms were not fully credible because they were "not entirely consistent with the medical evidence and other evidence of record," namely the "presence of acknowledged daily activities." *Id.* at 1371. The ALJ gave the "greatest weight" to the opinion of Dr. Cohen, whom testified, according to the ALJ, "that in his medical opinion the objective medical evidence of record did not support the existence of any medically determinable mental impairment aside from the claimant's acknowledged long-term and heavy polysubstance use at any time prior to the established onset date of June 29, 2011." *Id.* at 1377-78. The ALJ gave "significant weight" to the opinions of state agency medical consultants Dr. Cox and Dr. Bilick. *Id.* at 1378. The ALJ gave "less weight" to the opinion of Dr. Anderson, who testified at the May 2012 administrative hearing, "because Dr. Anderson expressly testified only to the claimant's functional level during the period

14

beginning June 29, 2011 and continuing."[11]  *Id.*  The ALJ accorded "little weight" to the opinion of examining psychologist Dr. Scaramozzino regarding plaintiff's functional level before June 29, 2011, and accorded "no significant weight" to the opinion of plaintiff's treating social worker Mr. Geray, for reasons discussed in greater detail below.  *See id.* at 1379.  The ALJ accorded "little weight" to the testimony and third-party statements of plaintiff's wife.  *Id.*

Proceeding to step four, the ALJ found that plaintiff had no past relevant work.  *Id.* at 1381. At step five, the ALJ found that, prior to June 29, 2011, considering plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that plaintiff could have performed.  *Id.*  These included jobs as custodian and dishwasher, in accordance with the hearing testimony of the vocational expert.  *Id.* at 1382.  As such, the ALJ found that prior to June 29, 2011, plaintiff was not disabled; because he was not disabled at any time through December 31, 2010, his Date Last Insured, plaintiff was not eligible for DIB.  *Id.* at 1382-84.  The ALJ continued to find that, beginning on June 29, 2011, claimant's impairments met the criteria of section 12.02 of 20 C.F.R., Part 404, Subpart P, Appendix 1, and therefore claimant was entitled to SSI.  *Id.*

## DISCUSSION

Plaintiff states that he is eligible for DIB, arguing that he was disabled as of January 7, 2010, and that his substance use was not a material, contributing factor to his disability.  Specifically, plaintiff contends: (1) that the Court previously held that substantial evidence did not support the conclusion that plaintiff was not disabled prior to June 29, 2011, and no new evidence on remand supports departing from the law of the case; (2) that the ALJ erred at step two by improperly considering the impact of plaintiff's substance use and by failing to find that plaintiff's mood/bipolar disorder was a severe impairment prior to June 29, 2011; (3) that the ALJ erred in discounting plaintiff's subjective symptom testimony; and (4) that the ALJ erred by rejecting the opinion of licensed clinical social worker Omar Geray.  Plaintiff argues that the appropriate remedy is a remand for a court-ordered award of benefits under the "credit as true" rule.

---

[11] The ALJ noted that at the time of the May 2012 hearing, plaintiff was alleging a disability onset date of June 29, 2011.  *See* AR at 1377 n.8.

## I.     Law of the Case Doctrine and Weighing of Medical Opinions

In its May 2015 Order, the Court found that substantial evidence did not support the ALJ's conclusion that plaintiff's impairments were not severe enough to be disabling prior to June 29, 2011, regardless of substance use.  Prior Order at 16-17.  Plaintiff argues that the only new evidence introduced upon remand was the October 2016 hearing testimony of Dr. Cohen, plaintiff, and plaintiff's wife, and that the testimony of Dr. Cohen was insufficient to warrant departing from the Court's prior ruling that the ALJ's nondisability finding was not supported by substantial evidence.  Defendant argues that neither the law of the case nor the rule of mandate doctrine dictates the outcome plaintiff advocates, arguing that new evidence was introduced on remand, that the Court did not order the ALJ to accept a certain opinion or find plaintiff disabled prior to June 29, 2011, and that the law of the case doctrine does not apply between ALJ decisions, since the Appeals Council vacated the first ALJ decision.  Def.'s Cross-Mot. at 2-5.

In the circumstances of this case, the Court agrees with defendant that the law of the case doctrine does not govern.  The Court's prior order found that substantial evidence did not support the ALJ's conclusion that the plaintiff was not disabled prior to June 29, 2011, because of a specific error: "The ALJ erred in rejecting portions of examining psychologist Dr. Scaramozzino's report in favor of the opinion of non-examining psychologist Dr. Bilik."  Prior Order at 16.  The Court further explained that "[t]he materiality of plaintiff's substance use is not a specific and legitimate reason to reject Dr. Scaramozzino's opinion because it was improper for the ALJ to consider the materiality of plaintiff's substance use prior to completing the five-step disability inquiry."  *Id.* at 17.

Nevertheless, the Court agrees with plaintiff that the weight the ALJ assigned Dr. Cohen's opinion was not supported by substantial evidence.  In the January 2017 decision, the ALJ repeated the errors made in the first decision when he gave the opinion of examining psychologist Dr. Scaramozzino "little weight" (AR at 1379) while assigning the "greatest weight" to the testimony of non-examining psychiatrist Dr. Cohen (*id.* at 1378).

An examining physician's opinion usually should be given more weight than that of a physician who has not examined the claimant.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  "If a treating or examining doctor's opinion is contradicted by another doctor's

opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). This is necessary "because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)).

At step two of the disability inquiry, the ALJ assigned "substantial weight" to the opinion of Dr. Cohen, saying it was "well supported by the objective medical evidence present and by the other evidence present in the record as a whole." AR at 1366. At the RFC stage, the ALJ assigned "the greatest weight" to the opinion of Dr. Cohen during the period prior to June 29, 2011, finding it to be "well supported by the objective medical evidence present in the record and by the other evidence present in the record as a whole as it applies to the claimant's functional level during the period at issue . . . ." *Id.* at 1378. By contrast, the ALJ assigned "little weight" to the opinion of examining psychologist Dr. Scaramozzino, who opined in September 2010 that, due to substance abuse, plaintiff would have moderate to marked limitations in various areas of work-related functioning. The ALJ rejected this opinion in large part because it was based on the claimant's subjectively reported history and subjective statements concerning his symptoms and because the ALJ found the opinion to be "strongly contradicted by the claimant's acknowledged daily activities during the period at issue[.]" *Id.* at 1379. As will be discussed further below, the ALJ erred in rejecting plaintiff's subjective symptom testimony and mischaracterized plaintiff's daily activities. It follows that the ALJ thus failed to provide specific and legitimate reasons for rejecting the opinion of the only examining physician whose opinion the ALJ weighed at this stage, Dr. Scaramozzino, in favor of the opinion of nonexamining physician Dr. Cohen.

The weight that the ALJ assigned to the opinion of Dr. Cohen was also not supported by substantial evidence for two additional reasons. Most prominently, as plaintiff points out, the ALJ

limited Dr. Cohen's testimony at the hearing to various hypotheticals that the ALJ posed. For instance, the ALJ posed as "hypothetical #1" an individual who as of January 7, 2010, voluntarily sought psychiatric admission for heroin detox in a VA program, had been using opiates for 2.5 years and last used the previous Tuesday, admitted to a history of substance abuse, and was assessed by the VA as having polysubstance abuse and opiate dependence with a Global Assessment of Function score ("GAF") of 35. *Id.* at 2895. The ALJ then asked Dr. Cohen, "Now, based on these facts, in your opinion, is drug abuse present and material as of January 7, 2010?" *Id.* The ALJ then proceeded to ask whether "such a person" could perform certain levels of work. *Id.* at 2897-98. The ALJ repeated this line of questioning for four different hypothetical individuals.

It is unclear why the ALJ questioned Dr. Cohen in the form of hypotheticals rather than questioning him about the plaintiff himself, particularly where Dr. Cohen had reviewed plaintiff's medical records in advance of the hearing. *See id.* at 2894. At times during the hearing, Dr. Cohen seemed to be attempting to opine on what he read in the record regarding plaintiff's medical history, but the ALJ prevented him from doing so and limited him to the facts presented in the hypotheticals.[12] At other times, Dr. Cohen interjected that the ALJ's hypothetical did not match what was reflected in plaintiff's medical records. *See, e.g., id.* at 2901-02 ("Q. Based on the facts

---

[12] For instance, the following exchange occurred between the ALJ and Dr. Cohen:

Q.      . . . Could such a person outlined in the facts I asked you to assume in hypothetical #1 do simple work?

. . .

A.      If he does abuse drugs, it's hard to do simple work. . . .

He was using so much -- he was using $20 a day of heroin.

Q.      Well, just answer -- just answer my question.

A.      He's --

Q.      Sir, could such a person do simple work?

A.      Yes. If they don't have any more functional limitations, they could do simple work.

AR at 2897-98.

of hypothetical 2, in your opinion, is drug abuse present and material during the period January 19, 2010 through early September 2010? A. Well, based upon that hypothetical, no, but it's -- it goes against the medical evidence because he was still using amphetamines at that time whenever he wanted to."). The ALJ stated in the decision that he gave substantial weight to Dr. Cohen's opinion "that the claimant's acknowledged long-standing heavy polysubstance abuse since age 8-10 . . . was the claimant's only established and documented medically determinable impairment." *Id.* at 1365-66. However, Dr. Cohen did not offer such an opinion. Dr. Cohen only responded to the hypothetical assumptions the ALJ posed, and the ALJ did not ask Dr. Cohen any questions outside of those related to four versions of a "hypothetical" claimant. *See id.* at 2894-2907. Dr. Cohen therefore provided no opinion *as to plaintiff himself.*

Additionally, the ALJ improperly asked Dr. Cohen to opine on whether the hypothetical claimant's drug use was "material" in the situations the ALJ presented, and the ALJ then relied on those opinions in his decision. SSR 13-2p states that "[t]he finding about materiality is an opinion on an issue reserved to the Commissioner under 20 CFR 404.1527(e) and 416.927(e). Therefore, we will not ask a treating source, a CE [consultative exam] provider, a medical expert, or any other source for an opinion about whether DAA is material." SSR 13-2p, 78 Fed. Reg. at 11943 n.19. "At the ALJ and Appeals Council levels . . ., the ALJ or Appeals Council determines whether DAA is material to the determination of disability." *Id.* at 11946.

The ALJ never defined the term "material" for Dr. Cohen, nor did he ask Dr. Cohen to elaborate on what the doctor meant when applying that term. Upon examination by plaintiff's counsel, Dr. Cohen explained that he used the term "material" to mean "another psychiatric diagnosis. . . . I don't have another psychiatric diagnosis. This is a whole, his -- any limitations he has is [sic] caused by the drugs and alcohol. He's forwardly using it, and it's material to any symptoms he has. I don't have another psychiatric diagnosis. It's all [Listing] 12.09 [substance addiction disorder] before June 2011." AR at 2908-09. This is not consistent with how the SSA defines materiality: "DAA is material if the claimant's other impairment(s) would improve to the point that the claimant would not be disabled in the absence of DAA." *See* SSR 13-2p, 78 Fed. Reg. at 11942. Dr. Cohen's opinion, on which the ALJ relied, improperly resolved the question of

materiality, which is specifically reserved to the Commissioner. *See id.* at 11943 n.19.

For all of the above reasons, the ALJ erred in assigning Dr. Cohen's testimony the greatest or substantial weight while assigning little weight to the opinion of Dr. Scaramozzino. Because this error impacted the ALJ's decision at multiple stages of the five-step disability analysis, the error alone warrants reversal of the ALJ's January 2017 decision.[13]

## II.     Materiality of Substance Use

Plaintiff also argues that the ALJ erred in improperly analyzing the materiality of substance use by failing to reconcile the pre-June 29, 2011 period with the period of sobriety and continued mental health impairments that followed. In the Court's May 2015 Order, the Court explained that "[t]he relevant inquiry in evaluating disability cases with co-occurring DAA and mental disorders is not whether plaintiff's substance use contributed to the disability, but rather, whether plaintiff's disability would remain after he stopped his substance use." Prior Order at 18 (citing *Sousa*, 143 F.3d at 1245). The Court found that "[t]he ALJ failed to reconcile the opinions of Dr. Bilik and Dr. Anderson with evidence in the record that plaintiff continued to suffer disabling mental impairments after maintaining sustained sobriety" and that the ALJ erred in rejecting the opinion of plaintiff's mental health clinical social worker Omar Geray, who treated plaintiff beginning on November 5, 2010. *Id.* On remand, the Court ordered:

_____

[13] Because plaintiff's argument centers around the weight the ALJ gave Dr. Cohen's opinion, the Court will not address whether the ALJ erred in weighing other non-examining physician opinions. However, the Court has concerns about whether substantial evidence supports the weight assigned to the opinions of Dr. Anderson and Dr. Cox. The reasons the ALJ credited the testimony of Dr. Anderson were internally inconsistent. At step two, the ALJ accorded "substantial weight" to Dr. Anderson's testimony that plaintiff's "long-term and heavy polysubstance abuse since age 8-10 and continuing through June 29, 2011 rendered meaningful evaluation of the severity of any possible independently existing mental impairments impossible prior to June 29, 2011." AR at 1366. At the RFC stage, the ALJ accorded Dr. Anderson's opinion "less weight during the period prior to June 29, 2011 because Dr. Anderson expressly testified only to the claimant's functional level during the period beginning June 29, 2011 and continuing . . . [a]s a result of the claimant amend[ing] the alleged onset date to June 29, 2011 at the beginning of the May 2012 hearing." *Id.* at 1378 & n.11. The ALJ also gave "significant weight" to the opinion of state agency consultant Dr. D. Cox. *See id.* at 1375, 1378. Dr. Cox's opinion is located at "Exhibit 10F." *See id.* at 485, 1375. That document consists of a single page, dated March 23, 2011, that contains only the following statement: "I have reviewed all the evidence in file, the most recent suggesting improvement/sobriety, and can affirm the determination of 10/6/10." *Id.* at 485.

The ALJ should evaluate the opinions of Dr. Bilik and Dr. Anderson in light of plaintiff's ongoing disabling mental impairments despite maintaining sobriety on June 29, 2011. The ALJ should also evaluate the plaintiff's treatment records between December 2010 and June 29, 2011, including the medical records during plaintiff's inpatient stay at the VA from January to February 2011 and treatment records from plaintiff's clinical social worker Omar Geray, to determine whether plaintiff's mental impairments would have remained in the absence of his substance use.

*Id.* at 19.

Plaintiff argues that the ALJ failed to follow the Court's order because on remand he erroneously did not reconcile the pre-June 29, 2011 period with evidence that plaintiff was disabled after maintaining sustained sobriety on June 29, 2011. The Court agrees.

At the October 2016 hearing following remand, plaintiff's counsel argued that this Court's Prior Order and SSR 13-2p dictate that the ALJ should look to periods of sobriety to understand if the claimant is disabled during periods of drug use. Counsel argued that "the period at June 29, 2011 through 2012 is the closest long period of sobriety, so we should actually be looking at that period." AR at 2917. The ALJ responded that "if you can't look at the evidence in the live period,[14] then we need to move on." *Id.* at 2918. Plaintiff's counsel argued that the "period from 2011 going forward is applicable to the live period because it's the closest longstanding period of sobriety," *id.*, but the ALJ rejected this argument, stating, "you want me to take a later period and read it back, and I don't think that's appropriate under the regulations and the law. There is your ruling for you." *Id.* at 2920.

This ruling directly contradicts the Court's Prior Order, which instructed the ALJ to evaluate medical records, such as the treatment notes of Mr. Geray, that post-dated the then-alleged disability onset date of December 31, 2010, to determine whether plaintiff's disability would have remained in the absence of his substance use. More importantly, the ALJ's refusal to "read back" records from a later period of sobriety to inform whether a claimant was disabled before his Date Last Insured contradicts SSR 13-2p. SSR 13-2p states:

Especially in cases involving co-occurring mental disorders, the documentation of a period of abstinence should provide information about what, if any, medical findings and impairment-related limitations remained after the acute effects of drug and

---

[14] The "live period" presumably refers to the period from the alleged onset date of January 7, 2010 to the Date Last Insured of December 31, 2010.

alcohol use abated. Adjudicators may draw inferences from such information based on the length of the period(s), how recently the period(s) occurred, and whether the severity of the co-occurring impairment(s) increased after the period(s) of abstinence ended. To find that DAA is *material*, we must have evidence in the case record demonstrating that any remaining limitations were not disabling during the period.

SSR 13-2p, 78 Fed. Reg. at 11945. Nothing in SSR 13-2p states that an ALJ should only look to periods of abstinence that occur before the "live period" rather than after.

In the January 2017 decision, the ALJ again failed to reconcile the period of sobriety beginning on June 29, 2011, and the disability that persisted even after plaintiff became sober, with the period that came before June 29, 2011, in evaluating the question whether plaintiff would remain disabled even if he stopped using substances. In this way, the ALJ repeated the error that the Court noted in the Prior Order. Even if the ALJ had looked to the later period of sobriety, the fact that plaintiff was found to be disabled even after maintaining sobriety indicates that the ALJ lacked "evidence in the case record demonstrating that any remaining limitations were not disabling during the period." *See id.*

### III. Severity of Impairments at Step Two

Plaintiff also challenges the ALJ's finding at step two that plaintiff's mood/bipolar disorder was not a severe impairment prior to June 29, 2011. Pl.'s Mot. at 22-23.[15] Even if this were error, any error was harmless. "Step two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987)). "It is not meant to identify the impairments that should be taken into account when determining the RFC." *Id.* at 1048-49. Indeed, the ALJ properly considered "all symptoms" at the RFC stage, including plaintiff's allegations of bipolar disorder, depression, and anxiety. *See* AR at 1370-81. Where step two is met, the five-step disability inquiry simply proceeds, as it did in this case. Plaintiff was not harmed by the ALJ's failure to find plaintiff's mood/bipolar disorder

---

[15] In the ALJ's January 2017 decision, the ALJ found at step two that since the onset date of January 7, 2010, and prior to June 29, 2011, plaintiff had the severe impairment of polysubstance use disorder. AR 1359. In contrast, in the June 2012 decision, the ALJ found at step two that since the alleged onset date of December 31, 2010, plaintiff's severe impairments were polysubstance abuse and bipolar disorder vs. substance-induced mood disorder. *Id.* at 17.

non-severe at step two.

## IV. Plaintiff's Symptom Testimony

Plaintiff challenges the ALJ's treatment of his subjective symptom testimony. The Ninth Circuit has established a two-step analysis for determining how to credit a claimant's symptom testimony:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. . . .
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison*, 759 F.3d at 1014-15).[16] If the ALJ finds the claimant's allegations of severity are not credible, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). "These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (internal quotation marks and citation omitted).

Here, at the first step of the credibility test, the ALJ found that plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms[.]" AR at 1371. The ALJ made no finding of malingering. Moving to the second step of the credibility analysis, the ALJ found plaintiff's "statements concerning the intensity, persistence and limiting

---

[16] Defendant disputes that the clear and convincing reasons standard applies to review of a claimant's subjective symptom testimony, though defendant acknowledges that this standard is the law of the Ninth Circuit. Def.'s Cross-Mot. at 12 n.4. The Ninth Circuit has repeatedly rejected defendant's position in recent years, reaffirming the continued validity of the clear and convincing reasons standard. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citing *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014)).

effects of these symptoms are not fully supported prior to June 29, 2011, for the reasons explained in this decision." *Id.* The ALJ went on to detail three categories of reasons he found plaintiff's testimony not entirely consistent with the medical evidence and other evidence of record: plaintiff's daily activities; "significant inconsistencies" among statements plaintiff made in his application for benefits, to his doctors, and during his hearing testimony; and what the ALJ deemed plaintiff's "failure to consistently complain to his treating, examining, and attending physicians during the period at issue of the same level of disabling symptoms he testified to during the hearing and generally alleges." *Id.* at 1371-72.

### A.    Daily Activities

The Court finds that plaintiff's daily activities do not provide a clear and convincing reason to reject plaintiff's symptom testimony. In examining plaintiff's daily activities, the ALJ considered the function report plaintiff completed on July 23, 2010, in connection with his disability application and one page of VA treatment notes completed on January 26, 2010, by Dr. Maria Castelli. *See id.* at 1371 (citing Ex. 4E, 8F/198). The only activities Dr. Castelli noted were: "enjoys playing music- drummer; fishing and collecting hotwheels" and "spiritual, attends church but not on a regular basis." *Id.* at 423. This note provides no insight into the level of daily activities plaintiff actually engaged in at that time.

The function report, by contrast, paints a picture of a person who used to engage in numerous activities but who at the time of writing barely left home and cycled through stages of hyperactivity and nonactivity. Plaintiff stated that "some days" he just went to the bathroom and maybe ate and might not shower or change clothes for several days. *Id.* at 77. He further stated:

> Other[ days]: May shower, eat what is prepared, occasionally may bar b que, may take out some trash/compost (several times a month), may do the lawn or water, may do some light chores[.]
>
> Occasionally will pick up a short grocery list or do a minor repair [or] keep a medical appointment[.]
>
> From being a productive carpenter and enjoying playing music I am just watching my life go by most of the time and at times thinking about ending it all[.]

*Id.* He reported, "There are days at a time I do nothing but sleep. There are other times that I don't

sleep for 3-5 days until I can no longer stay awake and fall asleep on my feet[.]" *Id.* at 78. He reported either not changing clothes and not bathing for 5+ days or that he would bathe up to two times a day. *Id.*

The ALJ cited certain of plaintiff's activities inaccurately or without the full context of what plaintiff reported. For instance, the ALJ stated that plaintiff prepared simple meals daily and "prepar[ed] more substantial meals on a barbecue grill 3-4 times per month[.]" *Id.* at 1371. But what plaintiff reported was that he prepared meals "sporadic[ally]. At times not for days. Bar b que up to 3-4x a month. At times prepare toast or sandwiches 1 or 2 times a day[.]" *Id.* at 79. He did not report preparing food daily, and instead said that he cooks "only . . . when desperate and wife is gone, sometimes not even then[.]" *Id.* The ALJ listed plaintiff as "performing household chores including doing the laundry, performing small repairs around the house, mowing the lawn, watering the yard, planting or pruning in the garden, and performing auto repairs; going outside alone daily . . . ." *Id.* at 1371. In fact, plaintiff said that he could do the listed activities "[i]f not at low" and that he did them "[v]ery sporadic and may take a week+ to put sink faucet together or 2 days to mow & rake front yard once a month[.]" *Id.* at 79. In response to the question "How often do you go outside?" plaintiff responded, "Usually daily to back yard or to 'collect' something" and that he would go away from home 1-5 times per week but sometimes not for over two weeks "because I do not feel good or good about self[.]" *Id.* at 80.

Most glaringly, the ALJ appears to have misunderstood what plaintiff meant by "collecting" items. The ALJ described plaintiff as "engaging in his hobby of collecting miniature cars 'at every opportunity,'" and cited this among the other activities as ones the ALJ found to be "at a level strongly generally inconsistent with complaints of disabling symptoms . . . ." *Id.* at 1371. By contrast, plaintiff described his "collections of stuff" as one of the reasons he has "successfully alienated most people" and stated that he and his family "have had to move several times due to my 'collecting' and inability to get rid of clutter." *Id.* at 82-83. In her third party function report completed at the same time, plaintiff's wife described him as "collecting to the point of losing our houses" and stated that "[w]e have had to move many times because of his inability to clear the yards from his obsessive collections." *Id.* at 73, 76. Plaintiff also referred to his "hoarding"

elsewhere in the record, stating in his disability report on appeal that "I do not even play my drums and cannot even access them do [sic] to all my hoarding." *Id.* at 85.

In examining the documents supporting the ALJ's list of plaintiff's daily activities, the Court finds they do not provide a clear and convincing reason to reject plaintiff's symptom testimony. Moreover, this error appeared to permeate the ALJ's decision. The ALJ recited this same list of plaintiff's supposed daily activities at three different parts of the decision. *See id.* at 1367, 1371, 1373. The ALJ also relied on the daily activities as a reason to reject the opinion of examining psychologist Dr. Scaramozzino, stating that his opinion "concerning the claimant's functional level during the period at issue prior to the established onset date of June 29, 2011 . . . is strongly contradicted by the claimant's acknowledged daily activities[,]" among other reasons. *See id.* at 1379.

### B. Inconsistencies in Statements

The ALJ also found plaintiff's symptom testimony was inconsistent with statements plaintiff made with his application for benefits and to his doctors. *Id.* at 1372. However, the only evidence the ALJ specifically cited as inconsistent was plaintiff's testimony at the May 2012 hearing "that his heavy polysubstance abuse was strictly an attempt to self-medicate underlying psychiatric symptoms and that his heavy polysubstance abuse did not begin until after he left the military in 1985," as contrasted with statements elsewhere in the record that "he had been engaged in essentially continuous heavy polysubstance abuse since age 8-10." *See id.*

The Court does not find these statements to be inconsistent. The May 2012 hearing transcript shows the following exchange between the ALJ and plaintiff:

> Q.   You don't have to read very far in your record to see that there is a long history, I think you know, of drug abuse. How did you get started in that? Heroin, meth and that sort of thing.
>
> A.   It was a means of self-medicating myself because I didn't feel right.
>
> Q.   Did it start in the military or after?
>
> A.   I think it was after.

*Id.* at 1339-40. The ALJ cites two portions of the record as evidence that plaintiff began heavy

polysubstance abuse at age 8-10. *See id.* at 1372 (citing Ex. 1F/5, 4F/2). One record says plaintiff reported a "long standing history of substance use starting at age 8-10" but does not specify what that substance was. *See id.* at 156. The second record, Dr. Scaramozzino's evaluation, states that plaintiff "reports that he started abusing alcohol at age 8. He reports that he stopped drinking in 1993; however, he has consistently been using a variety of illicit drugs over the last 15-20 years." *Id.* at 203. Because heavy use of certain substances such as alcohol since age 8-10 is not inconsistent with use of "heroin, meth and that sort of thing" (*see id.* at 1339) later in life, this was not a clear and convincing reason to reject plaintiff's symptom testimony.

### C. Failure to Consistently Complain of Same Level of Symptoms

Third, the ALJ rejected plaintiff's subjective complaints because he found plaintiff failed "to consistently complain to his treating, examining, and attending physicians during the period at issue of the same level of disabling symptoms he testified to during the hearing and generally alleges." *Id.* at 1372 (citing Ex. 1F/5-6; 2F/6; 4F/1-2; 8F/156-57, 192-99, 247, 252). The ALJ did not specify precisely what he found inconsistent with which complaints to physicians, and the Court has reviewed the exhibits the ALJ cited and is unable to discern what could be inconsistent. Some of the exhibits appear fully consistent with plaintiff's reports of disabling mental impairment, such as a January 7, 2010 progress note from VA clinical psychologist Delilah Noronha, PsyD. *See id.* at 477, 481. In it, plaintiff reported suicidal thoughts as recently as "today" and that he had a plan to take his life. *Id.* at 477. Of the above cited exhibits, the Court can find only one that may support the ALJ's finding of inconsistency: a January 26, 2010 treatment plan note from Dr. Castelli at the VA, in which plaintiff "currently rates his mood as 10/10, with 10 being the best he could feel" and that he stated, "I haven't felt this good in I don't know how long." *See id.* at 419. However, this note was written after plaintiff had spent nearly two weeks in inpatient care at the VA, and SSR 13-2p cautions that "[a]s for any mental disorder, we may find that a claimant's co-occurring mental disorder(s) is still disabling even if increased support or a highly structured setting reduce the overt symptoms and signs of the disorder." SSR 13-2p, 78 Fed. Reg. at 11945. Moreover, the ALJ did not provide "specific findings" as to what testimony he found inconsistent with which records, and

1   it is not this Court's role to speculate as to why the ALJ rejected plaintiff's allegations. *See Corbin*

2   *v. Apfel*, 149 F.3d 1051, 1053 (9th Cir. 1998) (citing *Bunnell*, 947 F.2d at 346; *Murray v. Heckler*,

3   722 F.2d 499, 502 (9th Cir. 1983)).

4       In sum, the Court finds the ALJ failed to provide clear and convincing reasons for rejecting

5   plaintiff's symptom testimony.

6

7   **V.      Opinion of LCSW Omar Geray**

8       Finally, plaintiff challenges the ALJ's assignment of "no significant weight" (*see* AR at

9   1379) to his treating licensed clinical social worker, Omar Geray. Plaintiff argues the ALJ

10  improperly failed to follow the Court's directive on remand to consider Mr. Geray's opinion. Pl.'s

11  Mot. at 24-25.

12      The parties agree that a social worker is not an accepted medical source under the Social

13  Security regulations. As such, an ALJ must give "germane" reasons for discounting the opinion of

14  a social worker. *Delegans v. Berryhill*, 766 Fed. App'x 477, 480 (9th Cir. 2019) (citing *Dodrill v.*

15  *Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

16      The Court finds that the reasons the ALJ gave for rejecting the opinion of Mr. Geray "as it

17  applies to the period prior to June 29, 2011" were not germane. Mr. Geray first met with plaintiff

18  on November 5, 2010. AR at 360-61. Plaintiff participated in therapy sessions with Mr. Geray,

19  sometimes as joint therapy sessions in which plaintiff's wife also participated. *Id.* at 2997-98. Mr.

20  Geray appears to have been part of a larger team that coordinated plaintiff's care, including when

21  plaintiff discharged from inpatient care at the VA in March 2012. In May 2012, Mr. Geray, at the

22  request of plaintiff's counsel, completed a questionnaire. *Id.* at 1297-1309. Mr. Geray indicated

23  that he had been seeing plaintiff since November 5, 2010, at which point plaintiff "was actively

24  using substances . . ., making assessment and diagnoses difficult. Now that he is sober, his extreme

25  mood swings from depressed to anxious and manic can be observed." *Id.* at 1301-02. In the May

26  2012 questionnaire, Mr. Geray assessed plaintiff as having bi-polar I and polysubstance dependence.

27  *Id.* at 1301. Mr. Geray assessed plaintiff as having moderate limitations in a number of employment

28  related areas. *Id.* at 1302-06. He stated that plaintiff had extreme limitations in his ability to perform

activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent level without abnormally long rest periods. *Id.* at 1303-04.

Mr. Geray initially assessed plaintiff as having moderate limitations in the ability to: sustain an ordinary routine without special supervision, make simple work-related decisions, ask simple questions or request assistance, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, travel in unfamiliar places, use public transportation, or set realistic goals or make plans independently of others. *Id.* at 1303-07. However, one day after completing the evaluation, Mr. Geray changed his "moderate" assessment to "extreme" in all these categories, indicating he made the changes after consulting "with clinicians that have recently observed Mr. Kroeger in various settings. Mr. Kroeger has presented as extremely anxious, with manic symptoms and disorganized thinking in both his home setting and during VA appointment[s]. The corrections made more accurately reflect Mr. . . . . [text at bottom of page cut off]." *Id.* at 1309. Mr. Geray's overall assessment of plaintiff's employability was as follows: "At baseline, the veteran has a very low tolerance to stress and is prone to frustration and anxiety. The veteran would need considerable support/ and/or possible accommodations to maintain functionality in the workplace. When symptomatic, in either a manic or depressed state, the veteran could not function consistently in most any work setting." *Id.* at 1307.

The ALJ rejected the opinion of Mr. Geray and the accompanying May 2012 evaluation. *Id.* at 1379. However, there was no reason to reject Mr. Geray's May 2012 evaluation simply because it occurred after the date the ALJ found to be the established disability onset date. As discussed above, periods of abstinence from substances "should provide information about what, if any, medical findings and impairment-related limitations remain after the acute effects of drug and alcohol use abated." *See* SSR 13-2p, 78 Fed. Reg. at 11945. Nor is it a germane reason to reject Mr. Geray's opinion "because Mr. Geray is not an acceptable medical source and has extremely limited ability to observe the claimant during the period prior to the date last insured . . . ." AR at 1379. The regulations allow for consideration of opinion evidence from "medical sources who are

not acceptable medical sources and from nonmedical sources," *see* 20 C.F.R. § 404.1527,[17] and it makes little sense for the ALJ to reject Mr. Geray's opinion based on the limited times he met with plaintiff prior to December 31, 2010, while the ALJ simultaneously afforded greater weight to state agency consultants (Dr. Anderson, Dr. Cohen, Dr. Bilik, and Dr. Cox) who never examined plaintiff in person. There is nothing to support the ALJ's assertion that Mr. Geray "provided no significant explanation, rationale, or objective support for the extreme limitations imposed aside form citing the claimant's reported symptoms," *see* AR at 1379; nothing in the questionnaire indicates it is not based on Mr. Geray's own observations from working with plaintiff since November 2010 and on the observations of the clinicians whom Mr. Geray consulted. Finally, the ALJ's statement that "the record contains no subsequent treatment or progress notes from Mr. Geray after his initial examination in November 2010" (*see id.* at 1379) is incorrect. *See, e.g., id.* at 794-95 (note dated Feb. 10, 2012), 994 (note dated June 29, 2011).

For all these reasons, the ALJ erred in rejecting the opinion of social worker Mr. Geray.

## VI.    Remedy Upon Remand

The remaining question is whether to remand this case for further administrative proceedings or for the immediate payment of benefits under the credit-as-true doctrine. "When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). However, under the credit-as-true rule, the Court may order an immediate award of benefits if three conditions are met. First, the Court asks "whether the 'ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Id.* (quoting *Garrison*, 759 F.3d at 1020). Second, the Court must "determine whether there are outstanding issues that must be resolved before a disability determination can be made, . . . and whether further administrative proceedings would be useful." *Id.* (citations and internal quotation marks omitted).

---

[17] This section applies to claims filed before March 27, 2017, such as plaintiff's.

Third, the Court then "credit[s] the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability." *Id.* (citing *Treichler*, 775 F.3d at 1101). Even when all three criteria are met, whether to make a direct award of benefits or remand for further proceedings is within the district court's discretion. *Id.* (citing *Treichler*, 775 F.3d at 1101). In rare instances, all three credit-as-true factors may be met but the record as a whole still leaves doubts as to whether the claimant is actually disabled. *Trevizo*, 871 F.3d at 683 n.11. In such instances, remand for further development of the record is warranted. *Id.*

Here, the Court has found that the ALJ failed to provide legally sufficient reasons for rejecting the medical opinion of Dr. Scaramozzino, the symptom testimony of plaintiff, and the opinion of Mr. Geray. The Court further finds that there are no outstanding issues to resolve and that further administrative proceedings would not be useful. The medical record in this case is extensive, containing over 1000 pages of treatment notes from the VA. The record includes mental health evaluations from examining and non-examining doctors. Defendant does not argue that the record requires further development nor does she identify any outstanding issues to be resolved.

Crediting the discredited testimony as true, there is no doubt as to plaintiff's disability. Beginning on January 7, 2010, the alleged onset date, and through May 2012, several months after plaintiff discharged from inpatient care after a long period of sobriety, the record shows that plaintiff's mental health disorder persisted, regardless of whether he was using substances. Even before he began long-term care on June 29, 2011, plaintiff experienced short periods of sobriety in which his mental health symptoms did not abate.

For instance, on January 7, 2010, the alleged onset date, plaintiff was voluntarily admitted into psychiatric inpatient care at the VA, seeking "to get off the heroin." AR at 469. He was discharged on January 19, 2010, and appears to have maintained sobriety for at least several months, through April 2010 or perhaps later. *See id.* at 367, 431. Yet despite his abstaining from substances, he presented at the emergency room multiple times for anxiety, depression, and fears that he might kill himself, including just four days after his discharge. *See id.* at 429 (ER visit on Jan. 23, 2010). Although at an outpatient visit at the VA on January 26, 1010, he stated, "I haven't felt this good in I don't know how long," he was given a diagnostic impression of mood disorder NOS, bipolar

affective disorder (by history), opiate dependence, and methamphetamine dependence.  *Id.* at 419, 424.  Just two days after that, on January 28, 2010, plaintiff contacted the VA stating that he was anxious and had run out of his medications.  *Id.* at 417.  After the clinician was not able to calm him, and he indicated that he might "start to contemplate SI [suicidal ideation]" if he had to wait for an appointment the next morning, he and the clinician agreed he should have someone drive him to the ER that night.  *Id.* at 418; *see also id.* at 385-86 (ER visit on Mar. 9, 2010, with diagnosis of anxiety and depression), 364-67 (ER visit on Apr. 28, 2010, with diagnosis of anxiety, depression, and history of substance abuse).

Although there is a gap in the treatment notes from late April 2010 to November 2010, the year and a half that followed plaintiff's January 7, 2010 admission into VA inpatient care show a larger pattern of plaintiff at times relapsing, attempting to access detox and mental health services, going to the VA for outpatient treatment, and presenting at the emergency room when he could not control his symptoms.  He sought care at the VA in November 2010, with his first encounter with Mr. Geray.  During a call with a VA clinician on December 17, 2010, he expressed continued interest in participating in the VA's Foundations of Recovery program (a residential addiction treatment program), *see id.* at 360, 1026, which he in fact began on January 5, 2011.  *Id.* at 343.  He was discharged from that program on February 4, 2011, at which point he was waitlisted for the long-term Homeless Veteran Rehabilitation Program.  *Id.* at 1026.  On June 29, 2011, he entered the VA's First Step residential treatment program and was discharged from there into the Homeless Veteran Rehabilitation Program.  *Id.* at 673, 721-22.

Despite maintaining long-term sobriety from June 29, 2011, plaintiff's mental impairments persisted.  This is evidenced in the various extreme limitations that Mr. Geray noted in his May 2012 evaluation, which the Court found above the ALJ wrongly discredited.  It is also echoed in the findings of Dr. Anderson, who testified at the May 2012 hearing that after June 29, 2011 (the only time period on which Dr. Anderson was asked to opine), plaintiff met Listings 12.02 (neurocognitive disorders) and 12.04 (depressive, bipolar and related disorders) and potentially 12.06 (anxiety and obsessive-compulsive disorders).  *See id.* at 1335-37.  In the ALJ's January 2017 decision, he correctly read this Court's prior order as not disturbing his finding that plaintiff was disabled as of

June 29, 2011, and was thus entitled to SSI. The ALJ again found that as of June 29, 2011, plaintiff was disabled on the basis of meeting Listings 12.02 and 12.04. *Id.* at 1382. The ALJ noted that Dr. Anderson testified at the first hearing that "essentially permanent organic brain dysfunction caused by the cumulative effect of the claimant's long-standing heavy polysubstance abuse through June 29, 2011 was the driving force behind the claimant's disability." *Id.* Elsewhere, the ALJ reiterated that the opinions of Dr. Anderson and Dr. Cohen "strongly support the conclusion that the onset of disabling mental impairment did not occur prior to June 29, 2011, but was instead the result of organic brain dysfunction caused by the <u>cumulative effect</u> of the claimant's long-standing heavy polysubstance use." *Id.* at 1380-81. As plaintiff noted at the October 2016 hearing, no one questioned Dr. Anderson about whether those impairments would have existed one day prior or even earlier. *See id.* at 3013 (arguing, "There is no evidence to support that he didn't meet those [listings] on June 28, the day before he walked into the rehabilitation center"). Nothing in the record indicates that plaintiff's disabling mental impairment began abruptly on June 29, 2011, rather than earlier, particularly where the impairment was "caused by the cumulative effect" of long-standing substance abuse. *See id.* at 1382.

The Court acknowledges the procedural oddities of this case. As the ALJ noted, it was not until after the ALJ issued the June 2012 decision that the SSA published SSR 13-2p, governing evaluation of cases involving DAA.[18] *See id.* at 2880, 2925. Moreover, at the first administrative hearing in May 2012, plaintiff's counsel amended the alleged disability onset date to June 29, 2011, despite the ALJ alerting him that this would disqualify plaintiff from DIB because his Date Last Insured was December 31, 2010. Only after the hearing did plaintiff's counsel seek to withdraw the amended disability onset date, stating that counsel made an error in the calculation of the Date Last Insured. *See id.* at 30. Thus, the initial administrative hearing was conducted without the ALJ or the impartial medical expert knowing that plaintiff would ultimately argue for an earlier disability onset date and seek to obtain DIB. Had plaintiff been seeking DIB at the time of the May 2012

---

[18] The Ninth Circuit, however, has stated in an unpublished memorandum that SSR 13-2p "simply codified policies that were already in existence." *Robinson v. Berryhill*, 690 Fed. App'x 520, 522 n.2 (9th Cir. 2017).

administrative hearing, the outcome of that hearing may have been different, perhaps avoiding some of this case's subsequent and lengthy procedural history.

Nevertheless, the Court finds that plaintiff has met his burden of showing he was disabled prior to December 31, 2010, and that his DAA was not material to his disability. *See* SSR 13-2, 78 Fed. Reg. at 11944 ("We will find that DAA is not material to the determination of disability and allow the claim if the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would improve to the point of nondisability in the absence of DAA."). Crediting the discredited testimony as true, plaintiff would have to be found disabled under Title II of the Social Security Act, and thus an award of DIB is appropriate. Moreover, remand for benefits is appropriate here where Plaintiff first applied for benefits over nine years ago and has already experienced lengthy, burdensome litigation, including a remand to the SSA from this Court in May 2015. *See Vertigan v. Halter*, 260 F.3d 1044, 1053 (9th Cir. 2001).

The Court echoes the ALJ's recommendation "that a determination be made concerning the appointment of a representative payee who can manage payments in the claimant's interest." *See* AR at 1383.

Nothing in this Order shall disturb the ALJ's ruling that plaintiff was disabled under Title XVI of the Social Security Act and is thus entitled to SSI.

## CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's motion for summary judgment and DENIES defendant's cross-motion for summary judgment. The Court REMANDS this case pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate payment of benefits.

**IT IS SO ORDERED**.

Dated: September 17, 2019

_____

SUSAN ILLSTON
United States District Judge